CUDAHY, Circuit Judge,
concurring in part and dissenting in part.
This is an implausible class action based on nitpicking with respect to perfectly legitimate practices of the fiduciaries. I would therefore affirm the excellent dis *802 trict court opinion throughout, including the summary judgment matters the majority chooses to reverse.
A particularly egregious issue involves the practice of including minor amounts of cash in the Plan’s company stock funds (“unitization”). This is, of course, a form of hedging — now elevated to the ominous-sounding level of “investment drag.” And this investment drag is allegedly compounded by “transactional drag,” which is another way of saying that trading costs are shared (perfectly appropriately) pro rata among participants instead of allocated to individual investors. Apparently, the failure of the trustee-defendants to make a “reasoned decision” on the record between unitization and the alternative practice of “real-time trading” is a basis for finding them in breach of their fiduciary duty. But the majority points to no provision of ERISA that would require a reasoned decision on the record about such a universally accepted investment practice as unitization.[1]
Hedging, involving the inclusion of small quantities of cash in the trading unit, has the effect of preventing the maximum realization of gain in bull markets or the maximum realization of loss when the market declines. This form of hedging is apparently present in the overwhelming majority of managed fiduciary funds investing in employer stock.[2] It has been adopted perhaps for the various administrative benefits asserted by the defendants[3] — or for the investment rationale that it reduces risk (as well as reward). Whether or not to hedge your bets is an investment decision, and hardly a matter outside of the ordinary discretion of the fiduciaries. It is obviously a matter every investor must routinely consider and decide. But I see no ERISA requirement that the pros and cons be spread on the record and the balance assessed. This is part of the ABC’s of investing — not some sort of esotérica. What the trustees did here is well within their discretion, both from an administrative and an investment standpoint, and should not become the subject of a federal lawsuit.
As to the other matter in which the majority has reversed summary judgment, an allegedly excessive fee for record-keeping service, the issue is much closer than *803 the unitization question but also less fundamental and significant. In fact, the cases the majority cites for the proposition that obtaining outside assessments does not adequately demonstrate prudence are entirely distinguishable, and involve ethically sensitive matters unlike the size of fees paid to an outside record-keeping service.[4] It is hard to determine exactly what the majority’s holding means for ERISA fiduciaries. The advice of consultants is not good enough to justify a fee, but competitive bidding may not always be required. So what is adequate to support a fee without fear of litigation? If plaintiffs can find one “expert” who will testify that the fee is too high, must there be a trial? Here, the trustees have a relationship with Hewitt going back fifteen years. They have a good sense of the dimensions of the job and Hewitt’s performance in carrying it out. Must they substitute any lower bidder that happens along? These are difficult questions and they leave room for the discretion that fiduciaries must be granted to perform their task. Holding otherwise will only serve to steer their attention toward avoiding litigation instead of managing employee wealth.
I would be content with the opinion of the district court on these matters. And I therefore respectfully dissent.

. The cases the majority cites for the proposition that a demonstrable exercise of discretion was required are entirely distinguishable and do not involve routine investment practices. In DiFelice v. U.S. Airways, Inc., 497 F.3d 410, 420 (4th Cir.2007), a demonstrable exercise of discretion was required with respect to the retention of an investment in company stock during a period when the company's viability was in question, and in Armstrong v. LaSalle Bank Nat’l Ass’n, 446 F.3d 728, 733-34 (7th Cir.2006), a demonstrable exercise of discretion was required in valuing company stock where the company recently purchased a large new subsidiary.

. See Robert Rachal et al., Fiduciary Duties Regarding 401 (k) and ESOP Investments in Employer Stock, in ERISA Litigation, 783, 790 n. 17 (Jayne E. Zanglein & Susan J. Stabile, eds., 3d ed.2008) ("Because unitization lowers transaction costs and allows participants to invest their money on the day of the fund exchange, most employer stock funds for publicly traded companies are unitized.”). A 2010 version of the same chapter, evidently not yet available in print, indicates that the prevalence of unitized stock funds may be as high as 90%. See Robert Rachal et al., ERISA Fiduciary Duties Regarding 401 (k) & ESOP Investments in Employer Stock 9 n. 23 (2010), available at http://swba.org/members_only/ conference_presentations/fall_2010/ERISA_ Litigation_Article.pdf.

. As the majority explained, among the most prominent administrative advantages of unitization is that by maintaining cash in the company stock plan, the fiduciaries can satisfy withdrawals immediately instead of selling company stock on the open market and incurring transaction fees.

. For instance, in Keach v. U.S. Trust Co., 419 F.3d 626 (7th Cir.2005), we stated that securing an independent assessment was not a complete defense to a charge of imprudency in the context of considering the propriety of a self-dealing purchase of securities that had no recognized market value. Id. at 636-37. Howard v. Shay, 100 F.3d 1484 (9th Cir. 1996), and Donovan v. Bierwirth, 680 F.2d 263 (2d Cir. 1982), likewise concerned fiduciaries seeking independent advice prior to engaging in transactions involving a conflict of interest. Donovan v. Cunningham, 716 F.2d 1455 (5th Cir.1983), involved a fiduciary’s reliance on an old valuation of closely held stock, again in a self-dealing transaction.